UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CRIMINAL ACTION NO. 3:10CR-00051-CRS-DW-26


RAMON F. FLORES                                    MOVANT/DEFENDANT


VS.


UNITED STATES OF AMERICA                      RESPONDENT/PLAINTIFF


## FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION

Before the Court is the motion and amended motion of Ramon F. Flores ("Flores") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. §2255. (DN 1048; DN 1051).  The United States has filed a response (DN 1062), and Flores has filed a reply (DN 1063).  After reviewing the briefs, the Court ordered the parties to file supplemental briefing as to the two claims in Flores's original *pro se* motion. (DN 1069).  The United States filed a supplemental response (DN 1073), and Flores filed a supplemental reply (DN 1077).

The District Judge referred this matter to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), for rulings on all non-dispositive motions; for appropriate hearings, if necessary; and for findings of fact and recommendations on any dispositive matter (DN 1061).  For the following reasons, the undersigned recommends Flores's petition and request for evidentiary hearing be **DENIED.**


## FINDINGS OF FACT

In June of 2010, Ramon F. Flores was named in a superseding indictment by a federal grand jury in the Western District of Kentucky. (DN 156, at p. 1).  Count 1 charged Flores,

among numerous others, with conspiracy to knowingly and intentionally possess with intent to distribute 5 kilograms or more of cocaine in violation of 21 U.S.C. §§ 812, 841(a)(1). (*Id.* at p. 2). Of the 26 named defendants, only Flores and his brother proceeded to trial on the charge. The evidence at trial showed that Flores and his brother supplied "hundreds of kilograms of cocaine from California to Michael McCarthy in Louisville, Kentucky[.]" (DN 968, at p. 2). The Flores brothers received millions of dollars for their involvement. (*Id.*). After a five-day jury trial in December of 2012, both were found guilty as to Count 1. (DN 699).

The Court sentenced Flores to 360 months of imprisonment to be followed by 5 years of supervised release. (DN 868, at pp. 3-4). Flores timely appealed his conviction to the Sixth Circuit, asserting two claims: (1) the district court violated his Sixth Amendment right of confrontation by admitting the testimony of T-Mobile's custodian of records, Susan Johnson, and (2) the district court erred in applying a four-level leadership enhancement to his sentence pursuant to U.S.S.G. § 3B1.1(a). (DN 968, at pp. 2-4). The Sixth Circuit affirmed Flores's conviction and sentence. (DN 968, at p. 5). Flores sought a writ of certiorari from the United States Supreme Court, which was denied on February 23, 2015. (DN 987; DN 1003).

On February 18, 2016, Flores filed a *pro se* 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence, setting forth two claims of ineffective assistance of counsel. (DN 1048). Two days later, Flores filed an amended motion to vacate, now represented by counsel. (DN 1051). The amended motion includes another claim of ineffective assistance of counsel (ground two) and also argues a confrontation clause violation (ground one) and improper mingling of conspiracies (ground three). The United States has responded to Flores's claims in both his original *pro se* motion and amended motion. (DN 1062; DN 1073).

2

CONCLUSIONS OF LAW

A. Standard of Review

Under 28 U.S.C. § 2255, a prisoner in custody may move the court that imposed the sentence to vacate, set aside, or correct that sentence on grounds that:

> [T]he sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]

28 U.S.C. § 2255(a). Where the prisoner alleges constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings to warrant relief. *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L.Ed.2d 353 (1993) (citation omitted); *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005). Non-constitutional errors, on the other hand, are generally outside the scope of § 2255 relief and only merit relief if the prisoner establishes a "fundamental defect which inherently results in a complete miscarriage of justice." *Reed v. Farley*, 512 U.S. 339, 348, 114 S. Ct. 2291, 129 L. Ed. 2d 277 (1994); *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000).

B. Ineffective Assistance of Counsel Claims

Between Flores's initial *pro se* motion and his amended motion, he raises three claims of ineffective assistance of counsel. (DN 1048-1, at pp. 1, 3; DN 1051, at p. 5). To establish ineffective assistance of counsel, a defendant must show deficient performance and resulting prejudice. *Knowles v. Mirzayance*, 556 U.S. 111, 122, 129 S. Ct. 1411, 173 L.Ed.2d 251 (2009); *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). The performance inquiry requires the defendant to "show that counsel's representation fell below an objective standard of reasonableness," and the court "must judge the reasonableness of counsel's

3

challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 688, 690.  Surmounting *Strickland's* high performance bar is never easy task.  *Premo v. Moore*, 562 U.S. 115, 122, 131 S. Ct. 733, 178 L.Ed.2d 649 (2011) (quoting *Padilla v. Kentucky,* 559 U.S. 356, 371, 130 S. Ct.1473, 1485, 176 L.Ed.2d 284 (2010)). When the Court assesses counsel's performance, it must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland,* 466 U.S. at 689. "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 88, 131 S. Ct. 770, 178 L.Ed.2d 624 (2011).

Establishing the required prejudice is a likewise high bar.  The prejudice inquiry compels the defendant "to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  The Court need not conduct the two prong inquiry in the order identified above or even address both parts of the test if the defendant makes an insufficient showing on one part. *Id.* at 697.

First, Flores's original *pro se* motion argues that trial counsel never explained the federal law of conspiracy to him, and, if Flores had been instructed on this law, he would have chosen to plead guilty.  (DN 1048, at p. 1).  Based on counsel's alleged failure, Flores claims his decision to not plead guilty and to go to trial was invalid because it was not knowing, voluntary, or intelligent. (*Id.*).   Relatedly, in ground two of Flores's original motion, he claims trial counsel failed to explain the advantages and disadvantages of pleading guilty versus going to trial. (*Id.* at

4

p. 3).  Without this knowledge, Flores argues he could not make an informed decision during the critical stages of his criminal proceeding. (*Id.* at p. 4).   The United States counters that the pretrial discussions on the record with the parties, counsel, and the district judge refute Flores's claims. (DN 1073, at pp. 4-5).

The decision to plead guilty rests with a criminal defendant, not his lawyer. *Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003).   The obligations of defense counsel, as it relates to advice during the plea negotiations stage, include the attorney reviewing the charges, discussing the evidence as it bears on the elements of the charges, and explaining the "sentencing exposure the defendant will face as a consequence of exercising each of the options available." *Id.* at 553.   As a general rule, defense counsel must communicate "formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 133, 132 S. Ct. 1399, 1408, 182 L.Ed.2d 379 (2012).  Further, when defense counsel allows a formal plea to expire without advising the defendant or allowing him to consider it, defense counsel has not rendered constitutionally effective assistance.  *Id.*

Here, the transcript from Flores's pre-trial conference demonstrates that even if Flores's trial counsel previously failed to explain the federal law of conspiracy or previously did not advise Flores of the consequences of going to trial, no prejudice resulted from counsel's performance.  During this pre-trial hearing, the prosecutor indicated that Flores had "so much to lose by conviction rather than guilty plea" and stated that he wanted to make sure the defendants understood their options "in a way that is open and verifiable." (DN 958, at p. 45).  The district judge permitted Flores's counsel and the prosecutor to make a sealed record of what plea offers had been made by the United States and what Flores's response was to those offers. (DN 957, at p. 3).  The prosecutor explained that the United States previously made an offer to Flores to

5

recommend a three-level reduction for acceptance of responsibility, a base level of 36, and a safety-valve qualification under his criminal history section. (*Id.* at p. 4). The prosecutor explained that based on the United States' offer, Flores would have a chance to get down to 151 or 168 months imprisonment, or even less than that; whereas, if he was convicted at trial, he had a very good chance of ending up with a guideline range of 360 months to life imprisonment. (*Id.* at pp. 4-5). Flores's counsel, without revealing his confidential communications with Flores, agreed that the prosecutor's description of the United States' offer was accurate. (*Id.* at p. 5). The District Judge then had the following exchange with Flores:

> The Court: Mr. Flores, you understand what they're saying here?
>
> The Defendant: Yes, I understand.
>
> The Court: You agree with what they're saying?
>
> The Defendant: I understand.

(*Id.*).

The transcript reveals that Flores had the opportunity to contest his understanding of the conspiracy charge or his understanding of the consequences for pleading guilty versus going to trial. Instead, Flores heard his counsel and the prosecutor discuss the favorable aspects of the plea deal the United States offered him and affirmed his understanding of that plea offer. Flores also had the opportunity at this hearing to forgo trial and pursue a guilty plea. Yet again, Flores indicated his understanding of the situation and decided to proceed to trial. Now, with the benefit of hindsight, Flores cannot claim that with more information from his trial counsel he would have pled guilty. Flores, therefore, cannot prove he was prejudiced by counsel's alleged failures and the two claims of ineffective assistance of counsel from his initial petition should be **denied.**

6

Flores's final claim of ineffective assistance of counsel contends that his counsel was under a duty to launch a full investigation to find data favorable to his case.  (DN 1051, at p. 5). Flores seems to believe his counsel did not follow this "line of investigation" and states "it could involve a *Strickland* violation as [he] failed to seek exculpatory evidence."  (*Id.*).  Flores cannot establish that his trial counsel performed deficiently in this respect because he does not provide any detail as to how counsel's performance fell below a constitutionally reasonable level. Specifically, Flores does not discuss what additional investigation counsel should have performed or what exculpatory evidence counsel could have discovered.  Flores likewise makes no attempt to prove that counsel's alleged lack of investigation changed the outcome of his proceedings.  Bare allegations, which are raised in a conclusory fashion and are unsupported by specific facts, do not serve as a basis for a finding of ineffective assistance of counsel.  *See Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000); *Lynott v. Story*, 929 F.2d 228, 232 (6th Cir. 1991).  Because Flores makes no meaningful attempt to establish either the performance or prejudice prong from *Strickland*, his undeveloped claim should be **denied.**

## C. The Confrontation Clause

Flores's amended petition also asserts "a possible violation of the Sixth Amendment Confrontation Clause by the government[.]"  (DN 1051, at p. 4).  Flores believes the United States improperly called Susan Johnson from T-Mobile to testify at trial because she was not the direct custodian of records. (*Id.*).  Flores also thinks it was improper for the United States to use GPS technology. (*Id.*).  The United States responds that this claim is procedurally barred on collateral review. (DN 1062, at p. 4).

When the Sixth Circuit has already addressed an issue on direct review, a movant is precluded from again raising it in a § 2255 motion absent highly exceptional circumstances, such

7

as an intervening change in the law. *Oliver v. United States*, 90 F.3d 177, 180 (6th Cir. 1996); *see also Davis v. United States*, 417 U.S. 333, 345, 94 S. Ct. 2298, 41 L.Ed.2d 109 (1974); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999). The United States is correct that Flores's claim in ground one is procedurally barred because the Sixth Circuit addressed this issue in his direct appeal. The Sixth Circuit found that based on Susan Johnson's testimony as a T-Mobile representative, the district court properly admitted GPS evidence under the business records exception in Fed. R. Evid. 803(6). (DN 968, at p. 4). The court explained that Johnson testified as to GPS information that T-Mobile's computer database keeps but the GPS data itself was not created for trial purposes and, for that reason, was not testimonial and did not violate Flores's confrontation rights. (*Id.*).

Flores fails to establish any highly exceptional circumstances permitting him to re-raise this issue. Although he cites to three Supreme Court cases (*United States v. Jones*, 565 U.S. 400, 132 S. Ct. 945, 181 L.Ed.2d 911 (2012); *Bullcoming v. New Mexico*, 564 U.S. 647, 131 S. Ct. 2705, 180 L.Ed.2d 610 (2011); and *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L.Ed.2d 177 (2004)), none of these cases constitutes an intervening change in the law that would affect the Sixth Circuit's decision to affirm Flores's conviction.[1] Because Flores fails to establish highly exceptional circumstances for raising this issue again, the claim should be **denied.**

### D. Mingling of Conspiracies

Flores's final ground for relief is difficult to decipher. It appears Flores is arguing that the district court erred in "mingling conspiracies," which prevented it from fully applying the

---

[1] In brief summary, *Bullcoming* involved a "testimonial" report created by an analyst for evidentiary purposes where the analyst did not testify at trial, and *Crawford* held that a wife's out-of-court statements were testimonial and their admission violated the confrontation clause. *Bullcoming*, 131 S. Ct. at 2707-08; *Crawford*, 541 U.S. at 36. Whereas, in *Jones*, the Court found that law enforcement's attachment of a GPS tracking device to a vehicle to monitor the vehicle's movement on public streets was a search under the Fourth Amendment. 132 S. Ct. at 946.

sentencing factors mandated by *Booker v. Washington*, 543 U.S. 220, 125 S. Ct. 738, 160 L.Ed.2d 621 (2005). (DN 1051, at p. 7). This mingling of conspiracies, Flores asserts, also "could imply" a *Brady* violation occurred. (*Id.* at p. 6). The United States declines to address the merits of Flores's third claim and, instead, encourages dismissal based on procedural default. (DN 1062, at pp. 4-5).

When a movant has procedurally defaulted a claim by failing to raise it on direct appeal, the claim may be raised in a § 2255 motion only if he demonstrates "cause" and actual "prejudice," *Murray v. Carrier*, 477 U.S. 478, 485, 106 S. Ct. 2639, 91 L.Ed.2d 397 (1986), or that he is "actually innocent." *Bousley v. United States*, 523 U.S. 614, 622, 118 S. Ct. 1604, 140 L.Ed.2d 828 (1998). Under the "cause" and "prejudice" test, "cause" must be something *external* to the movant or, in other words, something that cannot be fairly attributed to the movant. *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S. Ct. 2546, 115 L.Ed.2d 640 (1991). Objective factors that constitute "cause" include "interference by officials," *Murray,* 477 U.S. at 488, "a showing that the factual and legal basis for a claim was not reasonably available to counsel," *McClesky v. Zant*, 499 U.S. 467, 494, 111 S. Ct. 1454, 113 L.Ed.2d 517 (1991), or constitutionally "ineffective assistance of counsel." *Edwards v. Carpenter,* 529 U.S. 446, 457, 120 S. Ct. 1857, 146 L.Ed.2d 518 (2000).

To meet the "actual prejudice" requirement, a movant must show he was actually prejudiced as a result of the claimed constitutional error. *United States v. Frady*, 456 U.S. 152, 170-71, 102 S. Ct. 1584, 71 L.Ed.2d 816 (1982). The "prejudice" must be so substantial that it undermines the integrity of the entire trial. *Id.* at 169-70. If there is strong evidence of the movant's guilt and a lack of evidence for his claim, the actual prejudice requirement is not satisfied. *Id.* at 170-72.

9

Because Flores did not raise this "mingling of conspiracies" claim on direct appeal, he must prove cause and prejudice exists or that he is actually innocent to excuse his procedural default. Flores makes no effort to establish cause for his default. Flores had the opportunity in the reply memorandum to assert a cause and prejudice argument responding to the United States' procedural default stance. Yet Flores merely reiterated that an evidentiary hearing could solve the doubts surrounding the mingling of conspiracies amongst him and his brother. (DN 1064, at p. 3). The Court recommends **denying** Flores's claim in ground three as procedurally defaulted.

### E. Certificate of Appealability

When the Court rejects a claim on the merits, the petitioner must demonstrate that reasonable jurists would find the Court's assessment of the constitutional claim debatable or wrong in order for this Court to issue a Certificate of Appealability. *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). The Court finds its assessment of Flores's ineffective assistance of counsel claims would not be challenged by reasonable jurists. The Court, therefore, does not recommend a Certificate of Appealability issue as to Flores's ineffective assistance of counsel claims.

When the Court denies a habeas claim on procedural grounds, the petitioner must satisfy a two pronged test: (1) "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right;" (2) "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* at 484. A plain procedural bar is present to Flores's confrontation clause claim because he previously raised the issue on direct appeal. Likewise a procedural bar is present to his "mingling of conspiracies" claim because Flores fails to establish cause and prejudice for failing to raise the issue on direct appeal.

10

Therefore, the undersigned recommends that a Certificate of Appealability be denied as to Flores's confrontation clause and "mingling of conspiracies" claims.

## RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** Flores's motion to vacate (DN 1048) and amended motion to vacate (DN 1051) be **DENIED**.  It is further recommended that issuance of a Certificate of Appealability be **DENIED** as to all claims.

## NOTICE

Therefore, under the provisions of 28 U.S.C. Sections 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties.  Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court.  If a party has objections, such objections must be timely filed or further appeal is waived.  Thomas v. Arn, 728 F.2d 813 (6th Cir.), aff'd U.S. 140 (1984).

Copies:        Counsel of Record